IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| VERNON K. SMITH, | ) | |
| | ) | Case No. CV06-317-S-EJL |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **DECISION AND ORDER** |
| GARDEN CITY, IDAHO, a political | ) | |
| subdivision of the State of Idaho; JIM | ) | |
| BENSLEY, individually and in his | ) | |
| capacity as Chief of Police of Garden City, | ) | |
| Idaho; ANGELA LYTHGOE, individually | ) | |
| and in her capacity as a Garden City Police | ) | |
| Officer; AND JOHN and JANE DOES, I | ) | |
| through X inclusive, individually and in | ) | |
| their capacities as officials, employees | ) | |
| and/or agents of Garden City, Idaho, and | ) | |
| acting outside their constitutional authority, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## INTRODUCTION

Defendants Garden City, Jim Bensley, and Angela Lythgoe filed a Motion for Summary Judgment.  For the reasons expressed below, the Court will grant the motion as to all Defendants.

## FACTUAL BACKGROUND

On the evening of August 13, 2004, Plaintiff, Vernon K. Smith, a licensed and practicing attorney in the State of Idaho, was driving on Chinden Boulevard in

**Memorandum Decision and Order – Page 1**

Garden City, Idaho, when Officer Angela Lythgoe initiated a traffic stop of his vehicle.  The motive for the stop is disputed.  Officer Lythgoe claims she performed a routine check of Mr. Smith's license plate on her Mobile Computer Terminal (MCT), which indicated his registration was cancelled.  *Affidavit of Angela Lythgoe p.2.*  Mr. Smith alleges that Officer Lythgoe neither saw his plates nor ran the check.  According to Mr. Smith, on the prior evening he was stopped by a Boise City Police Officer and warned of his cancelled registration.  Mr. Smith alleges that Officer Lythgoe heard the Boise City Police radio transmissions from the prior evening, recognized his vehicle the next day, and pulled him over based on the assumption that his registration was still invalid.[1]  *Affidavit of Facts of Vernon K. Smith p.7.*

It is undisputed that Mr. Smith had been driving with cancelled registration approximately four (4) hours prior to the stop in question.  It is also undisputed that on 2:41p.m., the day of the incident, Mr. Smith had renewed his registration at the Department of Motor Vehicles.  However, citing the discrepancies between the registration documents provided by Mr. Smith and the information on her MCT, Officer Lythgoe issued Mr. Smith a citation for driving without registration.  In

---

[1]Other than his own Affidavit, Plaintiff has provided no evidence in the record to support his story of this prior traffic stop, any radio communications regarding his vehicle, that Officer Lythgoe heard or relied on such information, or that she failed to use her MCT or dispatch to check his vehicle registration.

**Memorandum Decision and Order – Page 2**

addition, Officer Lythgoe cited Mr. Smith for driving without his license in his immediate possession.[2]  Both citations were later dismissed upon providing proper documentation to the court.[3]

Mr. Smith brings suit, claiming among many things, that the traffic stop and citations were given without reasonable suspicion or probable cause in violation of his constitutional rights.  He further alleges the encounter and citations were part of a larger conspiracy by Garden City agents and officials to harass and deprive him of his constitutional rights.

Defendants move for summary judgment on all claims against them, and assert the defense of qualified immunity.  The Court will resolve the motion after first reviewing the standard of review for summary judgment and qualified immunity.

---

[2] It is undisputed that Mr. Smith did not have his license in his immediate possession. Idaho State Code provides for citations in the following clause: § 49-316 "[E]very licensee shall have his driver's license in his immediate possession at all times . . ."

[3] In that same section, the Code allows dismissal of the charge, stating "no person charged with a violation of the provisions of this section shall be convicted if a driver's license issued to the person and valid at the time of his arrest is produced in court."  *Id.*

**Memorandum Decision and Order – Page 3**

## STANDARD OF REVIEW

### Summary Judgment

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the court must not make credibility findings.  *Id.*  Direct testimony of the non-movant must be believed, however implausible.  *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  However, the Court is not required to adopt unreasonable inferences from circumstantial evidence.  *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

In this case, Defendants carry the initial burden of demonstrating the absence of a genuine issue of material fact.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th

Cir. 2001)(en banc).  To carry this burden, they may simply point out the absence of evidence to support the non-moving party's case, and need not introduce any affirmative evidence (such as affidavits or deposition excerpts).  *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir. 2000).

After a § 1983 defendant makes a properly supported motion for summary judgment based on immunity, the plaintiff has the obligation to produce evidence of his own; the district court cannot simply assume the truth of the challenged factual allegations in the complaint.  *Butler v. San Diego District Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004).  In such a scenario, the burden of proof is shifted to the non-moving party, the Plaintiff in this case,  to produce evidence sufficient to support a jury verdict in his favor.  *Anderson* at 256-57.  Plaintiff's statements as contained in his brief, if unsupported by the record, cannot be used to create a material issue of fact.  *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).  Instead, the "party opposing summary judgment must direct [the court's] attention to specific triable facts."  *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).  This requires the non-moving party to go beyond the pleadings and show "by [his] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists.  *Celotex,* 477 U.S. at 324.

**Memorandum Decision and Order – Page 5**

## Qualified Immunity

The purpose of qualified immunity is to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Saucier v. Katz*, 533 U.S. 194, 200, 202 (2001).  On the other hand, this privilege allows redress where clear wrongs are caused by state actors.  *Id.* "The privilege is an immunity from suit rather than a mere defense to liability, and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  *Id.* at 200-01.  "As a result, [courts] have repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation," long before trial.  *Id.* at 201, *see also Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993) (citing *Hunter v. Bryant*, 502 U.S. 224 (1991)).

A qualified immunity inquiry consists of two parts.  The threshold question asks whether, on the facts alleged, the defendant's conduct violated a constitutional right.  *Beier v. City of Lewiston*, 354 F.3d 1058, 1064 (9th Cir. 2004) citing *Saucier, supra* at 200.  The second step requires the court to determine "whether the right was clearly established."  *Id.*

As qualified immunity is properly decided prior to a jury trial, both inquiries are treated as questions of law for the court to decide.  *See Act Up!/Portland* at 873 (citing *Harlow,* 475 U.S. at 818).  Consequently, although the determination of

how a police officer acted or failed to act is a determination of fact, "the

determination whether those facts support an objective belief that probable cause

or reasonable suspicion existed is ordinarily a question for the court," and "is not in

itself a factual issue that can preclude summary judgment." *Id.* In other words, the

questions of whether a reasonable officer could have believed probable cause (or

reasonable suspicion) existed to justify a search or an arrest is "an essentially legal

question," to be determined by the court. *Id.* (citing *Mitchell v. Forsyth,* 472 U.S.

511, 526 (1985)).

## Claim Against a Muncipality

In addition to naming the investigating officer, Plaintiff has also named as

Defendants Garden City, Idaho and Jim Bensley, Chief of Police of Garden City.[4]

Since Plaintiff has sued Defendant Bensley in his official capacity, this is actually a

claim against the municipality and will be analyzed the same way as the claim

against Garden City. To make a claim against a municipality for a § 1983

violation, four criteria must be satisfied:

> (1) That [the Plaintiff] possessed a constitutional right of which he
> was deprived; (2) that the municipality had a policy; (3) that the
> policy "amounts to deliberate indifference" to the Plaintiff's

---

[4]Plaintiff alleges he is suing Chief of Police Bensley in his individual and official
capacity, but there are no facts alleged in the Complaint which would support a claim against the
Chief of Police individually, therefore, that claim must be dismissed as a matter of law.

constitutional right; and (4) that the policy is the "moving force behind the constitutional violation.."

*Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)).

A municipality may not be held liable under § 1983 solely because it employed a constitutional wrongdoer. *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978). Furthermore, a municipality cannot be held liable under § 1983 where no constitutional violation has occurred. *Sweaney v. Ada County*, 119 F.3d 1385, 1392 (9th Cir. 1997).

## ANALYSIS

Plaintiff, Mr. Smith, has sued the Defendants under 42 U.S.C. § 1983. Among other things, Mr. Smith alleges he was detained in a traffic stop without reasonable suspicion and issued citations without probable cause. He claims both of these actions constitute a violation of his Fourth Amendment rights. Defendants assert qualified immunity and move for summary judgment.

### 1. Violation of Constitutional Right

Taking the facts in the light most favorable to the party asserting the injury, the Defendant's conduct must be found to have violated a constitutional right. *Saucier* at 201 (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). Where no

violation is found, the officer is entitled to qualified immunity and there is no need for further inquiries. *Id.* at 201.

Mr. Smith claims he was pulled over without reasonable suspicion in violation of his Fourth Amendment Rights. The Fourth Amendment prohibits Garden City Officers from conducting "unreasonable searches and seizures," and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. *Terry v. Ohio,* 392 U.S. 1, 9 (1968). Where justification for an investigatory stop is in question, "the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe criminal activity may be afoot." *U.S. v. Sokolow*, 490 U.S. 1,7 (1989).

"Reasonable suspicion is formed by specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." *United States v Miguel,* 368 F.3d 1150, 1153 (9th Cir. 2004). However, where reasonable suspicion is based on an officer's mistaken belief, the court has distinguished between mistakes of fact and mistakes of law. *Id.* Where "an officer makes a traffic stop based on a mistake of law, the stop violates the Fourth Amendment." *Id.* (citing *United States v. Twilley,* 222 F.3d 1092, 1096 (9th Cir. 2000)). Conversely, "an officer's correct understanding of the law, together with a good-

**Memorandum Decision and Order – Page 9**

faith error regarding the facts, can establish reasonable suspicion." *Id.* at 1153-54.

Defendants correctly cite *Miguel*, a case where plaintiffs were stopped when officers relied on an incorrect registration expiration date in a computer database. *Id.* at 1151-52.  In fact, the plaintiffs had validated their registration a week prior to the stop.  *Id.* at 1154.  Those plaintiffs brought suit, arguing their rights were violated because the officers were mistaken in their reasonable suspicion.  *Id.* However, because the deputies' mistake was one of fact rather than law, the court held the stop did not violate the plaintiff's Fourth Amendment Rights.  *Id.*

None of the facts Mr. Smith has asserted constitute a mistake of law.  Mr. Smith contends Officer Lythgoe did not check his license plate prior to stopping him.  Rather, he claims she gained her reasonable suspicion based on a police transmission she presumably heard the night before.  *See Memorandum In Opposition To Defendant's Motion for Summary Judgment* at 6.  Mr. Smith's allegations are undocumented and unfounded conspiracy theories, wholly unsupported by any evidence creating a material issue of fact.  Moreover, the mistakes he alleges are mistakes of fact, which do not rise to the level of a constitutional violation.   In contrast, Defendants have provided this Court a transcript of the stop, in which Officer Lythgoe informs Mr. Smith of the reason for her stop.  *See Exhibit A of Statement of Undisputed Material Facts in Support*

**Memorandum Decision and Order – Page 10**

Case 1:06-cv-00317-EJL-LMB   Document 23   Filed 03/12/08   Page 11 of 15

*of Defendants' Motion for Summary Judgment.*  The transcript shows that Officer Lythgoe immediately informed Mr. Smith that his registration appeared to be cancelled and that his sticker did not appear to go with the vehicle.  *Id.* at p. 1.

Although these reasons were later discovered to be mistakes, a mistake about whether or not a vehicle is registered is a mistake of fact, not law.  Officer Lythgoe's understanding of the law was correct, as driving without valid registration is a violation of Idaho Code § 49-456.  Because Officer Lythgoe correctly understood the law of reasonable suspicion, there has been no constitutional violation and the Defendants are entitled to summary judgment for this claim based on qualified immunity.

Mr. Smith also alleges that Officer Lythgoe issued him citations without probable cause, in violation of the Fourth Amendment.  The Fourth Amendment protects people from "unreasonable searches and seizures."  U.S. Const. amend. IV.  Aside from his own opinion, Mr. Smith has presented this Court with no support for his assertion that a traffic citation falls under the protection of the Fourth Amendment as a 'search or seizure.'  Therefore, Officer Lythgoe's conduct of issuing citations also did not violate any constitutional right as put forth by Mr.

Smith.[5] Having found no constitutional violation, Officer Lythgoe is entitled to qualified immunity and the claims against the officer should be dismissed.

## 2.  Clearly Established Law

Even assuming, *arguendo*, that Mr. Smith's claims overcame the first prong of qualified immunity, they nevertheless fail under the second prong of the analysis.  This prong requires the constitutional right violated be clearly established.  *Saucier,* 533 U.S. at 201.  A law is 'clearly established' where it is "sufficiently clear that a reasonable official would understand that what [s]he is doing violates that right."  *Id.* at 202 (citing *Anderson v. Creighton,* 483 U.S. 635 at 640 (1987)).  Thus, the dispositive question the Court must ask is "whether it would be clear to a reasonable officer that [her] conduct was unlawful in the situation [s]he confronted.  *Id.*  In order for the court to determine whether a right is "clearly established," "the right allegedly violated must be defined at the appropriate level of specificity . . . ."  *Id.*

The problem with satisfying the second prong (other than the fact there was no constitutional violation) is that the standards of 'reasonable suspicion' and 'probable cause' are, by design,  not 'clearly established.'  The Supreme Court has

---

[5]  Regardless of the validity of Mr. Smith's Fourth Amendment argument, this Court finds Officer Lythgoe did have probable cause to issue a citation based on the a discrepancy between the information provided by her MCT and the documents of Mr. Smith.

**Memorandum Decision and Order – Page 12**

stated that "[a]rticulating precisely what 'reasonable suspicion' and 'probable cause' mean is not possible" as they are not intended to be "finely-tuned standards." *Ornelas v. U.S.*, 517 U.S. 690, 695-96 (1996). Rather, these are meant to be more objective, "fluid concepts that take their substantive content from the particular contexts in which the standards are being assessed." *Id.* (referring to *Illinois v. Gates*, 462 U.S. 213, 232 (1983) and *Brinegar v. U.S.*, 338 U.S. 160, 175 (1949)). Consequently, these "elusive concepts" are intentionally left "somewhat abstract," in an effort by the Court to "deliberately avoided reducing [these standards] to a neat set of legal rules." *Id.* at 695-96 (quoting *Gates, supra* at 232).

For these reasons, even if Officer Lythgoe's actions did constitute a constitutional violation, "the law did not put [her] on notice that [her] conduct would be clearly unlawful, [and] summary judgment based on qualified immunity is appropriate." See *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law")." *Saucier,* 533 U.S. at 202.

## Conclusion

Defendants have made a properly supported motion for summary judgment based on immunity, in which they correctly note the absence of evidence supporting the factual claims of this case. See *Butler, supra*, 370 F.3d at 963, and

*Fairbank, supra*, 212 F.3d at 532.  Mr. Smith had the burden of going beyond his pleadings, to show with depositions, affidavits, answers to interrogatories, or other discoverable documents, that a genuine issue of material fact exists.  See *Celotex, supra*, 477 U.S. at 324, and *Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  This Court notes the lack of any additional information in the record that would support Mr. Smith's claims and, without more support, declines to simply assume the truth of the challenged factual allegations in the complaint.  See *Butler v. San Diego District Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004).

On the basis of the foregoing, this Court will grant the Defendants' Motion for Summary Judgment.  The Defendants are entitled to qualified immunity because Mr. Smith's Fourth Amendment rights have not been violated. Additionally, because the Court concludes Office Lythgoe did not violate Mr. Smith's constitutional rights, summary judgment must also be granted in favor of the municipal Defendants.  All other claims or assertions made by Mr. Smith either hinge on this Court finding a constitutional violation or are completely unsupported by a proper claim or evidence and must be dismissed.

## ORDER

In accordance with the terms of the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the Defendants' Motion for

Summary Judgment (Docket No. 10) is GRANTED as to all Defendants and the

case is dismissed in its entirety.

DATED:  **March 12, 2008**

_____

Honorable Edward J. Lodge

U. S. District Judge